VILLAGE OF AXTELL, APPELLEE, V. NEBRASKA HARDWARE
MUTUAL INSURANCE COMPANY, APPELLANT.

7 N. W. (2d) 471

FILED JANUARY 6, 1943. No. 31510.

658

*J. P. O'Gara* and *Perry, Van Pelt & Marti,* for appellant.

*Anderson, Storms & Anderson,* contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff sues to recover from the defendant an occupation tax for the years 1939, 1940 and 1941.

The ordinance of plaintiff provides: "For the use, support and maintenance of the Volunteer Fire Department * * * an occupation tax of Five Dollars ($5.00) per annum shall be and is hereby levied upon each and every fire insurance company * * * doing business in this village." The question here presented is, was the defendant "doing business" in the plaintiff village so as to make it liable for the payment of the tax? The action was tried to the court, a jury being waived. The trial court found for the plaintiff. Defendant appeals. We affirm the judgment of the trial court.

The defendant is a mutual insurance company with its home office in the city of Lincoln. It has an agent who resides at Hastings, Nebraska, and who since 1926 has devoted his time exclusively to soliciting business for the defendant in the territory which includes the plaintiff village. The defendant does not have a resident agent and does not maintain an office at Axtell.

It secured its policyholders in Axtell through its agent who went into the village to call upon policyholders or

prospective policyholders. If the agent is successful in selling the insurance an application for insurance is made out and signed by the applicant. The premium on the insurance is sometimes paid to the agent at the time the application is signed. The application is, and, when paid, the premium and application are, then mailed to the defendant's office in Lincoln. If the application is approved by the defendant the policy is issued in Lincoln and mailed to the insured at Axtell. The defendant does not make an inspection of the property, save whatever inspection is made by the agent at the time the application is written. In conjunction with the inspection, if any, made by the agent the defendant uses the rating of the risk established by the Nebraska Inspection Bureau. The agent receives a commission of 50 per cent. of the first year's premium. Renewals are handled by mail from Lincoln without the intervention of the agent.

The defendant began insuring property in Axtell in 1920, and has done so continuously since that time. Its agent made at least six calls a year at Axtell, at irregular times. During the year 1939 it had nine policies, 1940 seven policies, and 1941 five policies in force in Axtell upon which it collected total premiums of $378.26.

The policy provisions and method of adjusting losses provide that when losses occur, and none are shown for the years in question, statements of losses were to be prepared in Axtell, minor ones would probably be adjusted by mail, and others by personal visits of a representative of the company to Axtell and an adjustment there made according to the policy terms.

The plaintiff has a municipal water system and furnishes fire protection through its water mains, fire fighting equipment and a voluntary fire department.

Defendant contends that, in order to establish that defendant is doing business in the village of Axtell, plaintiff must prove (1) that applications for insurance were executed in the village of Axtell, (2) were approved there by the defendant, and (3) were issued from there by the defendant.

The question of what constitutes "doing business," as that term is used in statutes, in the absence of a legislative definition, has been determined often by the courts. Generally, the question has arisen with relation to statutes applicable to foreign corporations "doing business" in a state. It has arisen with reference to statutes regulating such corporations, to taxation statutes, to statutes regarding the service of process, etc. Discussions of this subject generally are found in 23 Am. Jur. pp. 333 to 391; in 14a C. J. pp. 1270 to 1291; in 20 C. J. S. pp. 45 to 61, secs. 1828 to 1841; in 17 Fletcher, Corporations (Perm. ed.) secs. 8464 to 8502. Discussions of the term "doing business" with reference to insurance are found in 29 Am. Jur. 77; in 1 Couch, Cyclopedia of Insurance Law, sec. 245 (b) ; in 32 C. J. 996; and in Annotation 137 A. L. R. 1128. Discussions of the term "doing business" with reference to taxation are found in 61 C. J. 338, 340, 342, and in 2 Cooley, Taxation (4th ed.) sec. 920.

There are a wealth of decisions dealing with this subject, many of which have been cited to us by the parties. They are of assistance in establishing the reasons that have prompted the courts to reach the conclusions made. The texts above cited will furnish the references to the decisions and the discussions which we have considered. In the absence of a legislative definition, the meaning of "doing business" is a matter for judicial determination to be made primarily upon the particular facts and circumstances of each case. For that reason we do not undertake the impossible task of declaring a definition applicable to all situations, as no all-determinative, fixed, definite or precise rule for construing the words can be written. Cases on "all fours" with this one have not been found and accordingly we shall not cite decisions from other jurisdictions.

By analogy from the reasons given in the cases of foreign corporations charged with doing business in a state, we may arrive at bases for the determination of whether or not the defendant, a domestic corporation with its home

office in Lincoln, was doing business in the plaintiff village within the meaning of the ordinance. We undertake to determine only those rules, supported by the authorities, which appear applicable to and determinative of the instant case.

The word business is a comprehensive term and generally embraces everything about which a person may be employed. As used in the ordinance here construed, "doing business" implies a fair measure of permanency and continuity of business acts and purposes, in the sense that they may be distinguished from casual, occasional or isolated acts or business transactions.

"Doing business" as used in the ordinance refers to the doing of some of the business that is ordinarily and customarily done by the corporation in carrying out the purpose for which it was created, as distinguished from acts that are within the power of the corporation.

The presence of an agent of the corporation, within the village, soliciting business which is later consummated by the execution of policies and their delivery to the policyholders in the village, a course of action which is continuous over a period of years, is indicative, if not determinative, that the corporation is doing business in the village.

A broader meaning is attributable to the words "doing business" when used in a tax act, from the fact that the corporation receives the protection of local laws and institutions such as fire fighting equipment, a fire department, etc.

The fact that the insurance is written on property situated within the village is indicative that the corporation writing the insurance is doing business in the village. The fact that the corporation has written a substantial part of the insurance risks in a village adds force to that determination.

The fact that the corporation contracts to do further business in the village, to wit, adjust losses there, in the event losses occur, is indicative that it is doing business there within the meaning of the ordinance.

The fact that none of the several acts or transactions considered separately may constitute doing business is not conclusive, but rather the combined acts and circumstances must be considered. It is the effect of the combined acts and circumstances which determines the question.

In *Tomson v. Iowa State Traveling Men's Ass'n*, 88 Neb. 399, 129 N. W. 529, the defendant objected to the jurisdiction of the court, contending that it had never been engaged in business in Nebraska. It was shown that the defendant secured its new members in this state through the solicitation of existing members who were authorized to take applications, collect admission fees, transmit both to the company, and certificates of membership were issued from the defendant's home office in Iowa. It was shown that defendant had a large membership in this state, apparently secured by the above process. It was held that the defendant was doing business in this state. This case has been repeatedly referred to in the texts on the proposition that actively soliciting members and receiving considerable sums of money for assessments constitute doing business within the jurisdiction where the members are solicited and the funds received. As to this feature of the *Tomson* and the instant case the difference seems to be largely one of degree.

In a much different factual situation this court in *Traphagen v. Lindsay*, 95 Neb. 823, 146 N. W. 1026, said: "The expression 'doing business in the state,' as we view it, means that any person or corporation having a place of business in another state who comes into this state and solicits business by which it is to furnish any article of commerce or any manufactured article which is made in whole or in part at its place of business in another state, and which is to be furnished, sold or delivered to the purchaser in this state, is, in a comprehensive sense, doing business in this state."

Consistent with our own cases and for the reasons given, which are supported by the authorities, we hold that the defendant was "doing business" in the plaintiff village within the meaning of that language in the ordinance in question.

There remains one further matter to be considered. The ordinance in question rests upon the authority of section 35-401, Comp. St. Supp. 1939, now section 35-401, Comp. St. Supp. 1941. Defendant offered in evidence a transcript containing a certified copy of Legislative Bill No. 97 introduced in the Legislature on January 21, 1941, and referred to a committee and there considered. The bill proposed to amend the above section by inserting, following the words "doing business in such city or village" these words "through local writing agent, through transient agent, or by soliciting fire insurance business from or by delivering any policy of fire insurance to or by collecting any fire insurance premium from any person, firm · or corporation within the corporate limits of the municipality by mail or otherwise." The transcript purports to contain a summary of the testimony of witnesses for and against the bill. The bill was not passed. Defendant assigns this ruling as error. It does not here argue that the exhibit was admissible, but submits that we should consider it in any event.

Assuming, but not determining, our right to consider it, it is apparent that the proposal was one attempting to secure a legislative definition of the words "doing business" as used in the statute. We are not to speculate upon the reasons that prompted the legislature to indefinitely postpone the bill, nor to construe the ordinance in the light of proposed amendments to the state law. We are here called upon to construe the ordinance as it is written in accord with the statute.

The judgment of the trial court is affirmed.

AFFIRMED.