MID-CONTINENT AIRLINES, INC., NOW BRANIFF AIRWAYS, INCORPORATED, PLAINTIFF, v. NEBRASKA STATE BOARD OF EQUALIZATION AND ASSESSMENT ET AL., DEFENDANTS.

59 N. W. 2d 746

Filed July 17, 1953. No. 33260.

William J. Hotz, William J. Hotz, Jr., William F. Dalton, and Robert M. Kane, for plaintiff.

Clarence S. Beck, Attorney General, and C. C. Sheldon, for defendants.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an original action for a declaratory judgment commenced in this court to test the validity of sections 77-1244 to 77-1250, R. R. S. 1943. Such sections of the

statutes authorize the assessment, levy, and collection of an ad valorem personal property tax against plaintiff's flight equipment used in interstate commerce. Plaintiff contends that such taxation violates Article I, section 8, clause 3, of the Constitution of the United States, commonly referred to as the Commerce Clause. The defendants deny the unconstitutionality of the Nebraska act and assert the right to impose an ad valorem personal property tax upon plaintiff's flight equipment which is used within the state as a part of a system of interstate air commerce over fixed routes on regular schedules, so long as the allocation of the proportionate part of the property value and the levy thereon bear a fair and reasonable relation to the use of such flight equipment within the state. Briefly this constitutes the issue before the court.

Plaintiff is a corporation organized and existing under the laws of the State of Delaware with its corporate place of business at Wilmington in that state. The main executive offices of the plaintiff were in Kansas City, Missouri, until the consolidation of plaintiff with the Braniff Airways, Incorporated, was effected on or about August 1, 1952, at which time such offices were moved to Dallas, Texas. It is stipulated that Braniff Airways, Incorporated, is substituted for Mid-Continent Airlines, Incorporated, as the party plaintiff. The home port to which all its fleet of planes must return is Minneapolis and St. Paul, Minnesota. Plaintiff is licensed by the Civil Aeronautics Board of the United States to engage in interstate transportation by air for hire under the provisions of Title 49, U.S.C.A., sections 401 to 705. Pursuant to such authority it operates a large number of aircraft upon regular schedules in trunk line flight from Minot, North Dakota, to New Orleans, Louisiana, making regular landings in North Dakota, South Dakota, Minnesota, Nebraska, Iowa, Illinois, Kansas, Missouri, Oklahoma, Arkansas, Texas, and Louisiana. No planes land in plaintiff's domiciliary state of

Delaware. Plaintiff operates over 7,336 of unduplicated route miles. Plaintiff's activities in Nebraska consist of making landings at Omaha and Lincoln on regularly scheduled stops on interstate flights. There are 14 of such flights in and out of Omaha each day and 4 such flights in and out of Lincoln. These stops are made to handle mail, express, freight, and passengers and are usually of short duration, generally from 5 to 20 minutes. The home port for all planes here involved is the Wold-Chamberlain Air Field at St. Paul, Minnesota, where hangars, repair shops, and equipment are maintained. Municipal and federal government facilities are used at Omaha and Lincoln. The flight distance from Omaha to Lincoln is 60 miles and from Lincoln to Rulo it is 90 miles, these being the only routes traveled by any of plaintiff's planes in Nebraska within the limits of aerial routes specifically assigned by the Civil Aeronautics Administration. It is not disputed that plaintiff's operations are interstate in character and are subject to regulation by the federal government as an interstate common carrier. The gross income of plaintiff for 1951 was $9,818,363, and the net profit was $135,941. The income from the carriage of passengers, mail, freight, express, excess baggage, chartered planes, and miscellaneous sources is set forth in the record by stipulation. Plaintiff pays for depot rental space at Omaha in the amount of $22,000 a year, and a tax of 2½ cents a gallon on gasoline used which amounted to $14,180 in 1951. The tax levied in 1950 was $4,280.44, and in 1951 it was $4,518.29.

The formula for the assessment of the tax on flight equipment, defined in the statute as aircraft fully equipped for flight and used within the continental limits of the United States, is set forth in section 77-1245, R. R. S. 1943, as follows: "Any tax upon or measured by the value of flight equipment of air carriers incorporated or doing business in this state shall be assessed and collected by the Tax Commissioner. The

proportion of flight equipment allocated to this state for purposes of taxation shall be the arithmetical average of the following three ratios: (1) The ratio which the aircraft arrivals and departures within this state scheduled by such air carrier during the preceding calendar year bears to the total aircraft arrivals and departures within and without this state scheduled by such carrier during the same period; Provided, that in the case of nonscheduled operations all arrivals and departures shall be substituted for scheduled arrivals and departures; (2) the ratio which the revenue tons handled by such air carrier at airports within this state during the preceding calendar year bears to the total revenue tons handled by such carrier at airports within and without this state during the same period; and (3) the ratio which such air carrier's originating revenue within this state for the preceding calendar year bears to the total originating revenue of such carrier within and without this state for the same period." It is the contention of the plaintiff that the taxing of its flight equipment is prohibited by the Commerce Clause in any amount whatsoever. The question to be determined, therefore, is whether or not the levy of any ad valorem personal property tax on the flight equipment of the defendant on an allocation basis contravenes the Commerce Clause of the Constitution of the United States.

In Northwest Airlines, Inc. v. Minnesota, 322 U. S. 292, 64 S. Ct. 950, 88 L. Ed. 1283, 153 A. L. R. 245, the court dealt with the taxation of airplanes by the State of Minnesota which were engaged in interstate commerce. The plaintiff was a Minnesota corporation, its principal place of business was in St. Paul, Minnesota, and the latter city was the home port of all its planes. All of its planes were continuously engaged in flying from state to state as interstate carriers except when laid up for repairs. The taxing authorities of Minnesota assessed a tax on the full value of the entire fleet of planes belonging to the plaintiff which came into the

state. In upholding the tax on the full value of all of the planes of Northwest Airlines in Minnesota, the court said: "Minnesota is here taxing a corporation for all its property within the State during the tax year no part of which receives permanent protection from any other State. The benefits given to Northwest by Minnesota and for which Minnesota taxes - its corporate facilities and the governmental resources which Northwest enjoys in the conduct of its business in Minnesota - are concretely symbolized by the fact that Northwest's principal place of business is in St. Paul and that St. Paul is the 'home port' of all its planes. The relation between Northwest and Minnesota - a relation existing between no other State and Northwest - and the benefits which this relation affords are the constitutional foundation for the taxing power which Minnesota has asserted. See State Tax Comm'n v. Aldrich, 316 U. S. 174, 180. No other State can claim to tax as the State of the legal domicile as well as the home State of the fleet, as a business fact. No other State is the State which gave Northwest the power to be as well as the power to function as Northwest functions in Minnesota; no other State could impose a tax that derives from the significant legal relation of creator and creature and the practical consequences of that relation in this case. On the basis of rights which Minnesota alone originated and Minnesota continues to safeguard, she alone can tax the personalty which is permanently attributable to Minnesota and to no other State." In so holding the court specifically stated that the taxability of any part of this fleet by any other state than Minnesota, in view of the taxability of the entire fleet by that state, was not before, or decided by, the court. It was on this latter point that differences arose over the proper disposition of the case. Interstate commerce may be required, of course, to pay its fair share of the property tax burden which the states, in which the interstate business is done, may lawfully impose generally

on property located in them. In other words, interstate commerce bears no undue part of the burden if the personal property tax imposed by a given state is exclusive of all other property taxes assessed by other states, or, what is more material to the case before us, if the tax on its personal property regularly used over fixed routes in interstate commerce, both within and without the taxing state, is fairly apportioned to its use within the state. The failure of the court in the Northwest Airlines case to decide whether or not the factors set forth, which permitted full taxation in Minnesota, had the corresponding effect of preventing any taxation in any other state where interstate business was transacted by Northwest Airlines by means of the fleet of planes there involved, was the cause of the major division of the court on the issues involved. The majority to be consistent would necessarily be required to deny the right of taxation to other states in which Northwest Airlines planes engage in interstate business, or depart from the court's numerous holdings that multiple taxation of property used in interstate commerce constitutes an unlawful burden thereon in compelling the carrier to pay the taxing states more than its fair share of taxes measured by the full value of the property. It is axiomatic, we think, that if one state may properly tax the full value of the property, other taxes levied by other states would be a multiple taxation of the property constituting an unconstitutional burden upon interstate commerce.

The essential facts in the present case do not bring it within any announced rule that would permit any one state to levy an ad valorem personal property tax for the full value of the planes involved. In the present case the corporation domicile is in Delaware, its general offices in Texas, and the home port of the planes in Minnesota. Under such a division of the factors announced and considered in the Northwest Airlines case we cannot say that the fleet of planes in the case at bar

has any taxable situs in any one state where the full value of such planes could be taxed. Under such a situation we think the Northwest Airlines case leaves the door open for a decision on the issue as to whether or not, in a case such as we have here in which no state has a right to tax the fleet at full value, each state through which the planes land and engage in interstate business may tax a part of their value, if it is fairly related to their use within the taxing state. The over-all result of the Northwest Airlines case is that where the owner of a fleet of airplanes engaged in interstate commerce is a corporation of the state levying the tax with its principal place of business and the home port of all its planes within the same state, such state may tax the full value of the planes. Whether or not the taxing of the whole value in such state operates to exempt them from taxation in other states in which they engage in interstate business is specifically reserved by the opinion and casts serious doubt on the right of other states to do so unless, possibly, evidence of a tax situs in other states would have called for a different result. In any event, the authority of Minnesota to tax the full value of the fleet of planes rests upon the express presumption that in flying in interstate commerce on regular schedules through several states they had not acquired a permanent taxable status elsewhere, although some of them had actually been taxed in other states. Whether this means the result would have been different if it had been shown that there was a taxable situs in other states, or, whether it means that multiple taxation of tangible property is to be allowed even though the aggregate assessment exceeds the full value of the property, remains unanswered. We assume the former, in view of the many holdings of the United States Supreme Court relative to multiple assessments on property in interstate commerce which exceed the full value of the property as being an undue burden under the Commerce Clause.

In the later case of Ott v. Mississippi Valley Barge Line Co., 336 U. S. 169, 69 S. Ct. 432, 93 L. Ed. 585, the court sustained an apportioned ad valorem personal tax levy by the nondomiciliary state of Louisiana upon a fleet of vessels engaged in interstate commerce in inland waters. The facts show that the vessels in question came into New Orleans where they were left for unloading and reloading. They were then moved to ports outside the state. They were operated on no fixed schedule but the turn-arounds were made as quickly as possible. They remained only long enough to unload and take on cargo and to make necessary and temporary repairs. The State of Louisiana and the city of New Orleans levied ad valorem taxes on assessments based on the ratio between the total number of miles of lines in Louisiana and the total number of miles of all of the carrier's lines. In upholding the tax the court said: "It seems therefore to square with our decisions holding that interstate commerce can be made to pay its way by bearing a nondiscriminatory share of the tax burden which each State may impose on the activities or property within its borders. * * * We can see no reason which should put water transportation on a different constitutional footing than other interstate enterprises." Paraphrasing the latter statement, "We can see no reason which should put air transportation on a different constitutional footing than other interstate enterprises."

In the subsequent case of Standard Oil Co. v. Peck, 342 U. S. 382, 72 S. Ct. 309, 96 L. Ed. 427, 26 A. L. R. 2d 1371, the principle that vessels moving on inland waters in interstate commerce could be taxed by a state through which they passed on the basis of that portion of the value of the vessels represented by the ratio between the total number of miles in the taxing state and the total number of miles in the entire operation is adhered to as a proper method of tax allocation. The Peck case distinguishes Northwest Airlines, Inc. v. Minnesota, *su-*

*pra,* on the basis that it was not shown in the latter case that " 'a defined part of the domiciliary corpus' had acquired a taxable situs elsewhere." The further statement in the Peck case to the effect that "The rule which permits taxation by two or more states on an apportionment basis precludes taxation of all of the property by the state of the domicile," appears to sustain an allocation tax in a case such as we have before us in which no part of the property taxed was in the domiciliary state during the tax year. The holding in the Northwest Airlines case that the tax in that case on the full value of the air fleet was valid is based on a premise that is wholly absent in the present one.

The case relied upon the most to sustain the allocation theory of taxing personal property used in interstate commerce is Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 S. Ct. 876, 35 L. Ed. 613. It involved a tax on Pullman cars that were continuously moving in and out of the State of Pennsylvania. The fundamental concepts which support the allocation theory of taxing personal property used in interstate commerce are set forth in this case. The legal fiction that all personal property has its situs at the owner's domicile is abandoned, and the system of taxing it at the place at which it is used and by whose laws it is protected, when it is employed in a business requiring continuous and constant movement from one state to another, is plainly and definitely announced. That this case is relied upon in the Ott and Peck cases is clear. For reasons stated in the Pullman's Palace Car Company case, we think the inland water transportation cases are particularly applicable. The court in the Pullman case said: "No doubt commerce by water was principally in the minds of those who framed and adopted the Constitution, although both its language and spirit embrace commerce by land as well. Maritime transportation requires no artificial roadway. Nature has prepared to hand that portion of the instrumentality

employed. The navigable waters of the earth are recognized public highways of trade and intercourse." Air transportation likewise requires no artificial roadways other than port facilities. The rule as to one would appear to be fully applicable to the other.

The plaintiff relies primarily upon the following cases to sustain its position. Gibbons v. Ogden, 9 Wheaton 1, 6 L. Ed. 23; Smith v. Turner, 7 Howard 282, 12 L. Ed. 702; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150; New York Central & H. R. R. Co. v. Miller, 202 U. S. 584, 26 S. Ct. 714, 50 L. Ed. 1155; Union Tank Car Co. v. McKnight, 84 F. 2d 421; Spector Motor Service, Inc. v. O'Connor, 340 U. S. 602, 71 S. Ct. 508, 95 L. Ed. 573; Johnson Oil Refining Co. v. Oklahoma, 290 U. S. 158, 54 S. Ct. 152, 78 L. Ed. 238; City of Chicago v. Willett Co., 344 U. S. 574, 73 S. Ct. 460, 97 L. Ed. 333. We do not consider these cases controlling in the issue before us. A careful reading of some of them, however, indicates that they support the theory of the defendant. Some announce principles which have been abandoned in the natural course of change in our economic and transportation systems. Others are based on facts which clearly distinguish them from the present case while others involve a tax in no way resembling an ad valorem tax on personal property. The plaintiff also cites Pullman's Palace Car Co. v. Pennsylvania, *supra,* Ott v. Mississippi Valley Barge Line Co., *supra,* Northwest Airlines, Inc. v. Minnesota, *supra,* and Standard Oil Co. v. Peck, *supra,* which in our opinion definitely sustain the position of the defendant as we have heretofore stated.

It seems clear, therefore, that Nebraska and other similarly situated states have the power to impose an apportioned ad valorem personal property tax upon the flight equipment of this plaintiff, which is engaged in interstate commerce within the taxing state, when it has been wholly and continuously outside the state of the owner's domicile, and the assessed value of the prop-

erty bears a fair and reasonable relation to the use made of it in such taxing state.

The petition alleges also that the statutes in question are unconstitutional in that they violate Article I, section 9, clause 6, and Article I, section 10, clause 3, of the Constitution of the United States. These questions appear to have been abandoned in the brief and oral argument. We hold, however, that the foregoing constitutional provisions were not violated on the basis of the authorities cited dealing with the alleged violation of Article I, section 8, clause 3, of the Constitution of the United States.

The foregoing disposes of the only question raised by the petition. Plaintiff in its brief states: "Plaintiff contends such taxation by defendants is in violation of Article I, Section 8, Clause 3, of the Constitution of the United States, which vests in Congress the exclusive right to regulate commerce among the states, and the levy of such tax by the defendants constitutes regulation. No state constitutional question or other legal issue is presented for the Court's decision." We consequently limit the issue strictly to that raised by the petition. The plaintiff does not allege that the formula set forth in the statute produces an assessed value that does not bear a fair and reasonable relation to the use of the property within this state. That issue was not alleged, briefed, or argued by the plaintiff. We do not deem this issue to be before the court for its determination.

We find that the act is not violative of Article I, section 8, clause 3, Article I, section 9, clause 6, or Article I, section 10, clause 3, of the Constitution of the United States, on the basis on which it is here challenged. The petition of the plaintiff is therefore dismissed.

DISMISSED.