Moore Motor Freight Lines, Inc., Appellant, v. Department of Taxation, Respondent.

*September 8—October 3, 1961.*

For the appellant there were briefs by *Doar & Knowles* of New Richmond, and oral argument by *Warren P. Knowles*.

For the respondent the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

CURRIE, J. The issues presented on this appeal are:

(1) Were the operations of the taxpayer in Wisconsin during the years 1948 to 1953, inclusive, such as to subject it to taxation under ch. 71, Stats., on its net income apportioned to Wisconsin?

(2) Does the imposition of such a net income tax violate the commerce clause of the United States constitution inasmuch as all of taxpayer's activities in Wisconsin were confined exclusively to interstate commerce?

(3) Is there a sufficient "nexus" between the state of Wisconsin and taxpayer's business activities in the state as to permit the imposition of this income tax under the due-process clause of the Fourteenth amendment?

*Interpretation of the Tax Statute.*

The pertinent provisions of ch. 71, Stats., read as follows:

Sec. "71.01 (1) For the purpose of raising revenue for the state and the counties, cities, villages, and towns, there shall be assessed, levied, collected, and paid a tax on all net incomes as hereinafter provided, by every person residing within the state or by his personal representative in case of death; and by every nonresident of the state, upon such income as is derived from property located or business transacted within the state, except as hereinafter exempted. . . .

Sec. "71.07 (2) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income attributable to Wisconsin may be determined by an allocation and separate accounting thereof, when the business of such person within the state is not an integral part of a unitary business, provided, however, that the department of taxation may permit an allocation and separate accounting in any case in which it is satisfied that the use of such method will properly reflect the income taxable by this state. In all cases in which allocation and separate accounting is not permissible, the determination shall be made in the following manner: There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; provided, that in the case of income which follows the residence of the recipient, the amount of interest and dividends deductible under this provision shall be limited to the total interest and dividends received which are in excess of the total interest (or related expenses, if any) paid and allowable as a deduction under sec. 71.04 during the income year. The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios:

"(a) The ratio of the tangible property, real, personal, and mixed, owned and used by the taxpayer in Wisconsin in connection with his trade or business during the income year to the total of such property of the taxpayer owned and

used by him in connection with his trade or business everywhere. . . .

"(b) In the case of persons engaged in manufacturing or in any form of collecting, assembling or processing goods and materials, the ratio of the total cost of manufacturing, collecting, assembling or processing within this state to the total cost of manufacturing, or assembling or processing everywhere. . . .

"(3) Where, in the case of any person engaged in business within and without the state of Wisconsin and required to apportion his income as herein provided, it shall be shown to the satisfaction of the department of taxation, that the use of any one of the three ratios above provided for gives an unreasonable or inequitable final average ratio because of the fact that such person does not employ, to any appreciable extent in his trade or business in producing the income taxed, the factors made use of in obtaining such ratio, this ratio may, with the approval of the department of taxation, be omitted in obtaining the final average ratio which is to be applied to the remaining net income.

"(5) If the income of any such person properly assignable to the state of Wisconsin cannot be ascertained with reasonable certainty by either of the foregoing methods, then the same shall be apportioned and allocated under such rules and regulations as the department of taxation may prescribe."

The first contention advanced by taxpayer, as to why the afore-quoted statutes have no application to it, is that it has no property located in Wisconsin or "business transacted within the state." The department does not take issue with the argument that taxpayer has no property in Wisconsin in the sense of having a taxable situs here. However, the department strenuously disagrees with the assertion that taxpayer transacts no business in Wisconsin.

Taxpayer's business is the transportation of merchandise by motor truck as a common carrier. Therefore, it can be argued logically that wherever taxpayer transports goods for hire it is transacting business within the meaning of

sec. 71.01 (1), Stats. This interpretation of the statute seems required if the plain ordinary meaning of the statutory words, "business transacted within the state," is to control.

Taxpayer takes the position that activities within the state, which are confined solely to transporting goods in interstate commerce, cannot constitute the transaction of business within the meaning of sec. 71.01 (1), Stats. However, no Wisconsin decisions so construing this statute are cited in support of such position, and we are aware of none which have adopted so restrictive an interpretation.

Apparently, taxpayer has in mind decisions of other jurisdictions construing the statutory phrase "doing business" as applied to foreign corporations. As we pointed out in *Huck v. Chicago, St. P., M. & O. R. Co.* (1958), 4 Wis. (2d) 132, 138, 90 N. W. (2d) 154, decisions which have narrowly construed the statutory phrase "doing business" as applied to foreign corporations, so as to exclude activities constituting interstate commerce, are the result of endeavoring to avoid constitutional pitfalls. However, the concept of "doing business" has been held to have different meanings when used in connection with statutes concerned with licensing of foreign corporations, or extending court jurisdiction over foreign corporations, than when employed in taxation statutes. *Pergl v. U. S. Axle Co.* (1943), 320 Ill. App. 115, 117, 50 N. E. (2d) 115, 116. A broader meaning is attributable to the words "doing business" when used in a tax act because of the fact that the corporation receives the benefit of local laws and institutions. *Village of Axtell v. Nebraska Hardware Mut. Ins. Co.* (1943), 142 Neb. 657, 661, 7 N. W. (2d) 471, 474; *C. T. H. Corp. v. Maxwell* (1938), 212 N. C. 803, 811, 195 S. E. 36; 84 C. J. S., Taxation, p. 349, sec. 188 b.

We can perceive of no reason why we should attribute any intent to our legislature to restrict the meaning of the statutory words "business transacted within the state" to any-

thing less than their plain ordinary meaning. Neither do we deem it necessary to adopt the restrictive meaning contended for by the taxpayer for reasons of constitutionality, except in situations where the only business transacted arises from interstate commerce and the activities within the state are minimal or sporadic.[1] No claim is here made that taxpayer's activities in Wisconsin were minimal or sporadic. In fact, it is conceded that 73.21 per cent of all miles traveled by taxpayer's trucks during the years in question were traveled in Wisconsin. Therefore, we construe sec. 71.01 (1), Stats., as applicable to taxpayer's business activities in Wisconsin, even though the same have been confined solely to the transportation of goods by motor truck in interstate commerce.

Taxpayer advances the further argument that certain provisions of sec. 71.07, Stats., evince a legislative intention to exempt the interstate activities of motor carriers from the Wisconsin income tax. This argument is grounded upon the fact that the three factors, enumerated in pars. (a), (b), and (c) of sub. (2) of such statute and which are to be averaged in arriving at an apportionment formula to be applied to income of a taxpayer engaged in business within and without the state, are on their face wholly inapplicable to motor carriers. We deem that the force of this argument is entirely vitiated by the provisions of sub. (5) of sec. 71.07, which authorizes the department to prescribe its own rules and regulations for devising an apportionment formula in the event the other designated methods are unworkable. Pursuant to this authority the department had devised a formula for apportionment of taxpayer's income which embodied two factors, revenue and miles traveled;

[1] For a discussion of the problem of the constitutionality of a tax applied to minimal or sporadic activities confined to interstate commerce in the state which seeks to impose the tax, see 12 Alabama Law Review (1959), 66, 68.

and since revenue was taken at zero, the effect was to apportion taxpayer's net income on the basis of 50 per cent of its miles traveled in the state.

This argument also fails because tax exemptions do not arise by implication but must be clear and express. *Albion v. Trask* (1950), 256 Wis. 485, 41 N. W. (2d) 627. One who claims such an exemption must point to an express provision granting the same and bring himself within the terms thereof. *Fall River Canning Co. v. Department of Taxation* (1958), 3 Wis. (2d) 632, 637, 89 N. W. (2d) 203; *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 123, 9 N. W. (2d) 620. This the taxpayer has failed to do.

*The Commerce Clause of the United States Constitution.*

We pass now to the question of whether the imposition of the tax in question violates the commerce clause of the United States constitution. We are satisfied that it does not.

The companion cases of *Northwestern States Portland Cement Co. v. Minnesota,* and *Williams v. Stockham Valves & Fittings, Inc.* (1959), 358 U. S. 450, 79 Sup. Ct. 357, 3 L. Ed. (2d) 421 (hereinafter referred to as the *Portland Cement Co. Case*), are controlling of the result here. Minnesota and Georgia had imposed an income tax upon foreign manufacturing corporations which operated no manufacturing plants in those states. Each corporation maintained a sales office, a secretary, and several salesmen in the taxing state. All orders were accepted at the corporation's out-of-state home office and the goods ordered were shipped into the taxing state by common carrier. The taxes imposed were determined by means of an apportionment formula.[2] The

---

[2] The fairness of the two formulas was not in issue. The Minnesota apportionment formula employed the average of these three ratios, sales assignable to Minnesota to total sales, tangible prop-

United States supreme court, with three justices dissenting, upheld both the Minnesota and the Georgia taxes so imposed. The gist of the court's holding is stated in these words (p. 452):

"We conclude that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing state forming sufficient nexus to support the same."

The *Portland Cement Co. Case* has been widely interpreted as holding that taxes imposed on net income, which are fairly apportioned and nondiscriminatory, are valid as not imposing a burden on interstate commerce even though all the income is derived exclusively from interstate commerce.[3] The reasons why the taxes before the court in that case did not impose an unconstitutional burden upon interstate commerce are well set forth by Mr. Justice HARLAN in his concurring opinion (p. 469):

"The taxing statutes are not sought to be applied to portions of the net income of Northwestern and Stockham *because* of the source of that income—interstate commerce —but rather *despite* that source. The thrust of these statutes is not hostile discrimination against interstate commerce, but rather a seeking of some compensation for facilities and benefits afforded by the taxing states to income-producing activities therein, whether those activities be altogether local or in furtherance of interstate commerce. The past decisions of this court establish that such compensation may be had by the states consistent with the commerce clause.

erty in Minnesota to total tangible property, and payroll in Minnesota to total payroll. Georgia apportioned the income of the taxed corporation on the basis of inventory, wages, and gross receipts distributable to that state.

[3] For expressions of such an interpretation, see 47 California Law Review (1959), 388, 389; 46 Virginia Law Review (1960), 1051; Annotation, Income Tax on Foreign Corporation (1959), 3 L. Ed. (2d) 1787, 1790.

"I think it no more a 'regulation of,' 'burden on,' or 'interference with' interstate commerce to permit a state within whose borders a foreign corporation engages *solely* in activities in aid of that commerce to tax the net income derived therefrom on a properly apportioned basis than to permit the same state to impose a nondiscriminatory net income tax of general application on a corporation engaging in *both* interstate and intrastate commerce therein and to take into account income from both categories."

*United States Glue Co. v. Town of Oak Creek* (1918), 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, affirming 161 Wis. 211, 153 N. W. 241, illustrates the type of situation referred to by Mr. Justice HARLAN in the last paragraph of the foregoing quotation. In this case, the supreme court held that a state, in applying a net income tax of general impact to a corporation doing business within its borders, may reach income derived from interstate commerce to the extent that such income is fairly related to corporate activities within the state.

In a *per curiam* opinion closely following and relying for authority upon the *Portland Cement Co. Case, ET & WNC Transportation Co. v. Currie* (1959), 359 U. S. 28, 79 Sup. Ct. 602, 3 L. Ed. (2d) 625, the court affirmed a 1958 judgment of the North Carolina supreme court reported under the same title in 248 N. C. 560, 104 S. E. (2d) 403. The North Carolina court had held that the state's income tax, imposed upon that part of the net income earned within the state by a foreign motor carrier engaged exclusively in interstate commerce, was valid and did not impose a burden upon interstate commerce, since the tax was imposed only upon that portion of the motor carrier's net income reasonably attributable to its interstate business performed within the borders of the state, without any discrimination against such carrier.

Taxpayer attempts to distinguish the *Portland Cement Co.* and *ET & WNC Transportation Co. Cases* from the instant case on the ground that the taxpayers in those cases carried on some local activities within the taxing states, which, although in furtherance of interstate commerce, were apart from the actual transportation of goods in interstate commerce. We have already alluded to the nature of such local activities which were present in the *Portland Cement Co. Case.* Such local activities in the *ET & WNC Transportation Co. Case* consisted of the following:

(1) Maintaining rented freight terminals in various places in the taxing state for use in taxpayer's interstate operations;

(2) Owning and operating pickup and delivery trucks for use at these terminals;

(3) Owning the furniture, fixtures, and equipment in the terminals; and

(4) Picking up interstate freight from its customers in the taxing state.

Our reading of the majority, concurring, and dissenting opinions in the *Portland Cement Co. Case* convinces us that, while the local activities of the two taxpayer corporations may have had some significance in upholding the taxes imposed on due-process grounds, they played no part in the court's holding that such taxes did not violate the commerce clause. In fact, the *Portland Cement Co. Case* has been widely interpreted as rejecting "local activities" as a commerce-clause requirement.[4] Such conclusion seems inescapable in view of the comments made in both the majority and concurring opinions with respect to the earlier

---

[4] 47 California Law Review (1959), 388, 391; 43 Minnesota Law Review (1959), 1010, 1014; 29 University of Cincinnati Law Review (1960), 82, 87; 20 University of Pittsburgh Law Review (1959), 868, 869.

case of *West Publishing Co. v. McColgan* (1946), 328 U. S. 823, 66 Sup. Ct. 1378, 90 L. Ed. 1603, which affirmed, *per curiam,* a judgment of the California court in a case reported under the same title in 27 Cal. (2d) 705, 166 Pac. (2d) 861. The judgment of the California court had upheld the validity of a statute taxing "income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce."

The facts in the *West Publishing Co. Case,* as set forth in the California court's opinion, were as follows: Taxpayer was a Minnesota corporation having its principal office in the city of St. Paul, and was engaged in the business of selling lawbooks and other publications. It had not qualified to do intrastate business in California. During 1937–1939 it shipped books and other publications into California pursuant to orders taken by its four regularly employed solicitors located in California. These solicitors were authorized to receive payments on orders taken, to collect delinquent accounts, and to make adjustments. They were given space in offices of California attorneys in return for the use of taxpayer's books kept in these offices. Such offices were advertised in California newspapers and periodicals as being offices of the taxpayer. However, the California court, in its opinion, assumed that taxpayer's income in California was derived entirely "from activities in furtherance of a purely interstate business . . ." 27 Cal. (2d) 705, 712, 166 Pac. (2d) 861, 865.

Mr. Justice CLARK, speaking for the majority in the *Portland Cement Co. Case,* commented upon the local activities of the West Publishing Company in California by stating (p. 461):

"The opinion [in *West Publishing Co. v. McColgan*] was not grounded on the triviality that office space was given West's solicitors by attorneys in exchange for the

chanceful use of what books they may have had on hand for their sales activities. Rather, it recognized that the income taxed arose from a purely interstate operation."

Similarly, the concurring opinion of Mr. Justice HARLAN rejected the view advanced by the three dissenting justices, that the local activities of West Publishing Company in California controlled the result in the *West Publishing Co. Case,* by declaring (p. 468):

". . . it is surely stretching things too far to say that California was seeking to measure and tax office renting and complaint adjusting rather than part of the income from concededly interstate sales transactions."

Taxpayer in the instant case places reliance on certain decisions of the United States supreme court antedating the *Portland Cement Co. Case,* as did the dissenting justices in that case. That the supreme court has not always been consistent in its decisions concerning the impact of the commerce clause upon the taxing power of the states is apparent from the fact that the majority opinion in such case concedes there is a "need for clearing up the tangled underbrush of past cases." 358 U. S. 450, 457. The Pennsylvania court, apropos the same problem, had this penetrating comment to make in *Roy Stone Transfer Corp. v. Messner* (1954), 377 Pa. 234, 243, 103 Atl. (2d) 700, 705:[5]

"It would be a Herculean, if not impossible task, to review and harmonize the myriad decisions of the supreme court of the United States on the subject of interstate commerce and exactly what incidents thereof may be constitutionally taxed by the states. The dissenting opinions in many of those cases make clear that the task of recon-

---

[5] It is impossible to reconcile the result reached by the Pennsylvania court in this case with the later-decided *Portland Cement Co. Case.* Therefore, we consider that *Roy Stone Transfer Corp. v. Messner* no longer has any persuasive authority on the point of constitutional law therein decided.

ciling all the decisions is more difficult than was the task of Theseus as he threaded his way through the famous Cretan Labyrinth in search of the Minotaur."

Whatever may have been the confusion which existed prior to the *Portland Cement Co. Case,* we deem that case controls the decision of the instant appeal, and that the non-discriminatory income tax assessed against the taxpayer does not violate the commerce clause of the United States constitution. Furthermore, we are convinced of the soundness of such holding.

In passing, it perhaps should be noted that no issue of multiple taxation is before us on this appeal. Because of the impossibility of successfully attacking the fairness of the apportionment formula here applied by the department, a more-likely forum for raising this issue would be Minnesota, the domiciliary state. The majority opinion in the *Portland Cement Co. Case* had this comment to make on that problem (p. 462):

"Logically it is impossible, when the tax is fairly apportioned, to have the same income taxed twice. In practical operation, however, apportionment formulas being what they are, the possibility of the contrary is not foreclosed, especially by levies in domiciliary states."

As a footnote to this sentence the court cited *Standard Oil Co. v. Peck* (1952), 342 U. S. 382, 72 Sup. Ct. 309, 96 L. Ed. 427, wherein Ohio's *ad valorem* property tax on vessels domiciled there, but plying in interstate trade, was struck down because it was not apportioned.

*Sufficient Nexus Under the Due-Process Clause.*

The reference, in the court's opinion in the *Portland Cement Co. Case,* to the necessity that there be local activi-

ties within the state forming a "sufficient nexus" [6] to support a nondiscriminatory net income tax levied on interstate operations of a foreign corporation, is pertinent only with respect to the due-process clause of the Fourteenth amendment, not the commerce clause. [7] This is because the taxing state must have some jurisdiction over the party sought to be taxed, otherwise such tax would be a denial of due process. Unfortunately, the United States supreme court in some instances has not differentiated between the application of the commerce and due-process clauses, and at other times seems to have confused the two restrictions. [8]

Taxpayer contends that a foreign corporation must have local activities in the taxing state, in addition to activities confined solely to transporting goods in interstate commerce, in order for the state to have jurisdiction to levy an income tax on such corporation. In raising this argument, taxpayer has overlooked the significance of the reason the United States supreme court, in cases involving state taxation of foreign corporations engaged in interstate commerce, has stressed such local activities as maintaining salesmen or solicitors, or operating an office, within the state. Most of these cases deal with situations in which the interstate commerce is carried on by an independent common carrier, such as, for example, a manufacturer shipping goods into a state

---

[6] The court used the term "nexus" to refer to the due-process requirement that there must be "some definite link, some minimum connection, between a state and the person, property, or transaction it seeks to tax." This definition the court took from its decision in *Miller Bros. Co. v. Maryland* (1954), 347 U. S. 340, 74 Sup. Ct. 535, 98 L. Ed. 744.

[7] See 20 University of Pittsburgh Law Review (1959), 868, 869.

[8] See 46 Virginia Law Review (1960), 1051, 1059, and the concurring opinion of Mr. Justice RUTLEDGE in *International Harvester Co. v. Department of Treasury* (1944), 322 U. S. 340, 353, 64 Sup. Ct. 1019, 1030, 88 L. Ed. 1313, 1319.

pursuant to prior orders accepted by it. Without the presence of permanent employees, or the maintenance of an office in the state, substantial doubt would exist as to there being a sufficient nexus to sustain a tax levied upon the income resulting from such interstate operations in the state.[9]

However, in the instant case there is no necessity of finding any local activities by taxpayer in Wisconsin other than operating its trucks through the state over the state's highways. We are aware of the requirement that a tax, levied on interstate commerce solely for support of highways, to be valid must bear a reasonable relationship to the costs sought to be defrayed by its levy. *Capitol Greyhound Lines v. Brice* (1950), 339 U. S. 542, 545, 70 Sup. Ct. 806, 94 L. Ed. 1053; *Ingels v. Morf* (1937), 300 U. S. 290, 57 Sup. Ct. 439, 81 L. Ed. 653. No such limitation exists with respect to a general income tax levied for the general purposes of state government. The validity of the latter tax in the instant case is in no way affected by the fact that Wisconsin also imposes truck-license fees and gasoline taxes upon the taxpayer, the proceeds of which are used exclusively for highway costs and maintenance. Every user of the state's public highways receives the benefit of the protection of the state's laws, which is something apart and in addition to actual use of highway facilities. Since taxpayer's use far exceeds being merely minimal or sporadic, it certainly derived sufficient benefits and protection from the state of Wisconsin to subject it to a fairly apportioned and nondiscriminatory share of the state's tax burden.

We are satisfied that there is nothing in the due-process clause of the Fourteenth amendment which would prevent activities in interstate commerce taking place within the

---

[9] For a brief synopsis of what has been held to constitute a sufficient "nexus," see Anno. Tax—Income of Foreign Corporation, 67 A. L. R. (2d) 1322, 1331.

state's borders from providing a sufficient nexus to sustain a tax levied on such operations. Support for this conclusion is provided by the following declaration in the *Portland Cement Co. Case* (p. 461) :

". . . it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the state."

Mr. Justice CLARK expressed the same thought more tersely when he observed, "Even interstate business must pay its own way." *Postal Telegraph-Cable Co. v. Richmond* (1919), 249 U. S. 252, 259, 39 Sup. Ct. 265, 63 L. Ed. 590. This was reiterated by Mr. Justice HOLMES in his dissent in *New Jersey Bell Telephone Co. v. State Board* (1930), 280 U. S. 338, 351, 50 Sup. Ct. 111, 74 L. Ed. 463, except that he substituted the words "interstate commerce" for "interstate business." Also in *Wisconsin v. J. C. Penney Co.* (1940), 311 U. S. 435, 444, 61 Sup. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229, the court stated that the ". . . controlling question is whether the state has given anything for which it can ask return."

In *Memphis Natural Gas Co. v. Stone* (1948), 335 U. S. 80, 68 Sup. Ct. 1475, 92 L. Ed. 1832, the court upheld the validity of a franchise or excise tax on all foreign corporations doing business within the state. The tax statute provided, "It being the purpose of this section to require the payment of a tax . . . measured by the amount of capital or its equivalent, for which such organization receives the benefit and protection of the government and laws of the state." [10] The Memphis Natural Gas Company was a Delaware corporation whose only activities in Mississippi were the operation of a natural gas pipeline through the state. At two points within the state compressing stations were situ-

---

[10] 7 Mississippi Code. Anno. (1942), p. 150, sec. 9314.

ated to facilitate the flow of gas through the pipeline. The only employees in Mississippi were those necessary to maintain the pipeline and its auxiliary appurtenances. It was conceded that the company was engaged exclusively in interstate commerce in the state. For the purposes of the instant appeal, we consider the reason advanced to sustain the tax by Mr. Justice RUTLEDGE, in his concurring opinion in that case, to be most pertinent:

"So here I do not think that the local activities for the protection of which the Mississippi tax purports in terms to be laid become separate from the interstate business which petitioner conducts in Mississippi, either by reason of the apportionment or otherwise. But they are incidents of carrying on that business taking place in Mississippi and only there, for which Mississippi affords protection received from no other state or the United States. Nor can any other state give that protection. For that portion of the business and the protection given it, I think the state is entitled to levy such a tax as has been placed here." Id., page 98.

Likewise, in the instant case no other state than Wisconsin affords protection to the taxpayer's trucks and operators while they are plying the highways of this state. We are satisfied that taxpayer's interstate activities in Wisconsin, to which this state extends the protection of its laws, supply a sufficient nexus to sustain the taxes levied on the income derived from such activities to constitute due process of law.

*By the Court.*—Judgment affirmed.