NORTHWEST AIRLINES, INC., Appellant, v. DEPARTMENT OF REVENUE, Respondent.†

*No. 75–57. Argued November 3, 1976.—Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 337.)

† Motion for rehearing denied, without costs, on June 22, 1977.

154

For the appellant there were briefs by *DeWitt, Mc-Andrews & Porter, S. C.* and oral argument by *Jack DeWitt,* all of Madison.

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. On this appeal Northwest contends DOR's method of calculating the ad valorem tax, which included nonmigratory property located outside of Wisconsin, violated the equal protection and due process clauses of the Fourteenth Amendment and the Commerce Clause of the United States Constitution, and violated sec. 76.07 (3), Stats., in that the resulting determination

was not substantially just and correct as required by sec. 76.18.

DOR contends the trial court erred in altering one of the formula factors so as to result in a lower tax.

Northwest is a Minnesota corporation which operates an interstate and international airline. A part of its operations is in Wisconsin and subject to an ad valorem tax by Wisconsin pursuant to ch. 76, Stats.[1]

Prior to 1973, the DOR assessed airline systems by computing the value of the airline by three separate methods—namely—(1) cost less depreciation; (2) stock debt ratio; and (3) capitalization of income. Usually the system value of the airline was calculated by a combination of cost less depreciation and capitalized income.

The airline tangible property was classified as migratory and nonmigratory. The migratory percentage figure was calculated on net book cost and was applied to the system value to determine the total dollar value of migratory property subject to apportionment. This amount was then multiplied by a percentage figure calculated to equal Wisconsin's fractional share of the migratory property.

The percentage apportionable to Wisconsin was determined by taking the average of four fractions: (1) Revenues originating in Wisconsin over all originating revenues; (2) tonnage originating and terminating in Wisconsin over all originating and terminating tonnage; (3) flight and ground time in Wisconsin over all flight and ground time; and (4) arrivals and departures in Wisconsin over all arrivals and departures. After the Wisconsin portion of the migratory property was determined by this method, the value of the nonmigratory

[1] Sec. 76.01, Stats., provides in part: "The department of revenue shall make an annual assessment of the property . . . of all air carriers . . . within this state, for the purpose of levying and collecting taxes thereon as provided by this chapter."

property located in Wisconsin was added to constitute the Wisconsin assessment figure subject to the tax.

In 1972 the total Wisconsin assessment of Northwest was $11,500,000. This was based on a system value of $759,477,000 with a Wisconsin allocation factor of 1.5142 percent. The 1972 tax was $401,528.

In 1973 the DOR used a different formula to determine the system value of the airline. Its purpose was to use a more objective standard. The new formula gives the rate to be used in capitalizing income and takes into consideration several aspects of the airline's total operation. The dispute between the parties regarding the formula for determining system value is limited to the three factors used.

The formula adopted by the DOR in 1973 to determine the value of the entire system was as follows:

The first factor used by DOR was 70 percent as the ratio of borrowed capital to total capital instead of Northwest's actual 28 percent ratio. The explanation given is that 70 percent is an average for airlines and that the formula seeks to value an airline as a prospective purchaser which could restructure the ratio at the time of purchase. The next factor used was 40 percent as the effective federal income tax rate rather than the fixed 48 percent rate. This is claimed to be more realistic because of federal policies such as investment credits, overpayment in prior years and deferrals or loss carrybacks. The third factor was a thirteen-year life of depreciable assets. This figure was obtained from the annual depreciation and combined cost of owned flight and ground property reports submitted by Northwest for the years 1971 and 1972.

The Wisconsin allocation factor for 1973 was determined by taking a weighted average of three fractions. They were: (1) Wisconsin originating revenues over all originating revenues, weighted 25 percent; (2) Wis-

consin originating and terminating tonnages over all originating and terminating tonnages, weighted 25 percent; and (3) Wisconsin flight time over all flight time, weighted 50 percent. The DOR contends that flight time was more of an accurate gauge than flight and ground time because it more accurately measures Wisconsin's contribution to the system value. Using this method, the allocation factor for Wisconsin was 1.623 percent of the entire system. For the year 1972 it had been 1.5142 percent.

Subsequent to the 1973 assessment, DOR developed a new system for determining the portion of an airline that should be attributed to Wisconsin which introduces a tangible property factor resulting in an increased assessment.

The principal difference between the 1972 and 1973 formulas is that in 1972 out-of-state nonmigratory property was excluded and in 1973 it was included.

Northwest sought a judicial redetermination of the tax assessment in the circuit court for Dane county pursuant to secs. 76.08 and 76.18, Stats. The trial court found that in calculating capitalized income DOR used a five-year average of income. Two years were high income years. The court concluded that because of a steady decline in income a four-year base was more equitable. This revision reduced the value of the entire system as calculated by DOR from $674,636,000 to $639,589,000. The DOR also used the formula adopted after the 1973 notice of assessment to determine the Wisconsin allocation. This was inconsistent with DOR's first notice of assessment to Northwest and in excess of the rate to other companies. The trial court reduced the allocation factor to .01623 as originally used in the 1973 assessment as being more equitable and equal to the other airlines assessed by DOR for 1973.

The question of what, if any, tax may be imposed on interstate commerce has been with us throughout our constitutional history. In *Brown v. Maryland*, 25 U.S. 419, 446–49 (1827), Chief Justice MARSHALL declared that any state tax upon interstate commerce was prohibited by the commerce clause. By 1959 this rule had changed. In *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 452, the court held "that net income from the interstate operations of a foreign corporation may be subjected to state taxation. . . ."[2] In *Braniff Airways v. Nebraska Board*, 347 U.S. 590 (1954), an apportioned ad valorem property tax levied on flight equipment of an interstate airline was found to be constitutional. But a recognition that a state may tax an interstate commercial enterprise does not solve the problem of the constitutionality of the tax because even with such a recognition "troublesome problems" remain.[3]

The problems which remain relate to whether the tax meets the requirements of the commerce and due process clauses. In the area of taxation of interstate commerce, these two clauses are closely related and cases have tended to mix the restrictions of one clause with those

[2] The transition from a holding that interstate commerce could not be taxed to the position of the court in *Portland Cement* was a long and arduous one. *See, e.g.,* Note, "State Taxation of Interstate Commerce—Commerce Clause Analysis," 76 West Va. L. Rev. 380 (1974); Comment, "State Taxation of Interstate Commerce: Roadway Express, the Diminishing Privilege Tax Immunity, and the Movement Toward Uniformity in Apportionment," 36 Univ. of Chicago L. Rev. 186, 206–211 (1969); Barnes, "State Taxation of Interstate Commerce: Nexus and Apportionment," 48 Marq. L. Rev. 218 (1965); Note, Developments in the Law, Federal Limitations on State Taxation of Interstate Business, 75 Harv. L. Rev. 953 (1962); Annot., 67 A.L.R.2d 1322.

[3] *See Norfolk & Western R. Co. v. Missouri State Tax Comm.,* 390 U.S. 317, 319 (1968).

of the other.[4] Initially, the taxpayer's activities within the taxing state must "form a sufficient 'nexus between such a tax and transactions within a state for which the tax is an exaction.'" *Portland Cement, supra* at 464.[5] In order to satisfy due process, the tax must have a "relation to opportunities, benefits, or protection conferred or afforded by the taxing State." *Braniff Airways, supra* at 600. Additionally, to satisfy the commerce clause the tax must not be discriminatory and must be properly apportioned to local activities within the taxing state.[6]

Northwest contends the tax is unconstitutional because Wisconsin is taxing out-of-state property that has no relationship in Wisconsin. In order for a tax to survive due process challenges the state must have given something for which it can ask return.[7] The second argument is closely connected to the first. It is that because the base from which the Wisconsin tax apportionment is calculated is incorrect in that it includes the value of property unrelated to Wisconsin, the apportionment itself is also incorrect. "A State will not be permitted, under the shelter of an imprecise allocation formula or by ignoring the peculiarities of a given enterprise, to 'project the taxing power of the state plainly beyond its borders.'" *Norfolk & Western R. Co. v. Missouri State Tax Comm., supra* at 325. Finally, it is argued that the

[4] *National Liberty Life Ins. Co. v. State*, 62 Wis.2d 347, 357 and 365, 215 N.W.2d 26, cert. denied, 421 U.S. 946.

[5] *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 445 (1940); *Moore Motor Freight Lines v. Dept. of Taxation*, 14 Wis.2d 377, 392–93, 111 N.W.2d 148 (1961); *National Geographic Society v. California Board of Equalization*, — U.S. — (1977), [45 L.W. 4343]; *Complete Auto Transit, Inc. v. Brady*, — U.S. — (1977), [97 S. Ct. 1076].

[6] *Portland Cement, supra* at 452; *Moore Motor Freight Lines, supra* at 387.

[7] *Wisconsin v. J. C. Penney Co., supra* at 444.

tax is unconstitutional because it imposes a multiple tax. A multiple tax is unconstitutional.[8]

The DOR cannot tax property which is unconnected with Wisconsin.[9] Some of the nonmigratory property used to calculate Northwest's value is located in other states and even other countries. Northwest contends that this is taxation by Wisconsin of property not connected with Wisconsin. The state responds that the unitary concept of valuation which it used is recognized as valid by the United States Supreme Court.[10] Further, sec. 76.03 (1), Stats., directs that property shall be valued and assessed as a unit. This section, read in conjunction with sec. 76.07 (3) as to the manner of assessing the proportion of an enterprise within the state, supports the DOR's position. The first section states that the valuation of property shall be by unit. The second states that the DOR "may take into consideration the value of the entire system."[11] DOR complied with this statute. The DOR argues that separating out-of-state nonmigratory property from the rest of the system when valuing the system violates the unitary concept. It contends that there is a connection between business originating in Wisconsin and nonmigratory property located outside the state. A passenger boarding a Northwest flight in Wisconsin may use a Northwest Hotel upon reaching his destination in Alaska or Tokyo and these facilities may have been the inducement to use Northwest. If this is the case, the inclusion of the out-of-state nonmigratory property in the base value is proper. This is a benefit or opportunity for Northwest that relates this out-of-state nonmigratory property to Wisconsin in such a way that Wisconsin may include it in the base from

---

[8] *Portland Cement, supra* at 462–63.

[9] *Norfolk & Western R. Co., supra* at 324.

[10] *Id.*

[11] *See* n. 1, *supra.*

which it figures its tax. We conclude Wisconsin does have a sufficient nexus with out-of-state nonmigratory property to satisfy the commerce clause and due process.

One challenging the apportionment of a tax, or in this case challenging the manner in which the base from which the apportionment was calculated, has a heavy burden. *Norfolk & Western R. Co., supra* at 326. "Its task is to show that . . . [the base for the apportionment] has resulted in such gross overreaching, beyond the values represented by the intrastate assets purported to be taxed, as to violate the Due Process and Commerce Clauses of the Constitution." *Id.* DOR did not specifically tax this out-of-state nonmigratory property. Rather it included it in a base constituting the total value of Northwest Airlines. Using three factors, which Northwest does not challenge, it determined that approximately 1.6 percent of this total value could be attributed to property in Wisconsin and levied the tax on this 1.6 percent. Formulas have been sustained by the Supreme Court "even though it could not be demonstrated that the results they yielded were precise evaluations of assets located within the taxing State." *Id.* at 324. The court went on to note that states have been given considerable latitude in devising formulas to measure the value of an interstate enterprise's value in their state. Expert witnesses for Northwest testified that DOR's method of calculating the base failed to accomplish an equitable allocation of a fair share of the system to Wisconsin, but DOR presented testimony saying exactly the opposite. While Northwest maintains that some of this out-of-state nonmigratory property has nothing to do with airline operations and therefore nothing to do with a Wisconsin tax, this allegation was not sufficiently proved. If it had been shown that this was the fact, the inclusion of the nonmigratory property in the base for the allocation would be unconstitutional; the heavy bur-

den of showing that the DOR's formula was gross over-reaching would have been met—in this case it was not.

In *Norfolk & Western R. Co., supra,* an assessment formula was struck down. Missouri had calculated the tax by using mileage of track within the state as compared to mileage of the system. While the court had approved this mileage formula in previous cases, it noted that Missouri's "rigid application of the mileage formula led to a grossly distorted result." The Missouri formula led to a substantially increased tax on the railroad in the year it was applied. The Wisconsin formula reflected the lower value of the Northwest system in 1973 as compared to 1972. In 1973, the first year the new formula was applied, the tax upon Northwest was lower than the tax of 1972. There was no showing that the inclusion of the out-of-state nonmigratory property in the base value from which the DOR apportioned the Wisconsin value led to a grossly distorted or unfair result.

It is also argued that this allocation base results in a double tax. Addressing this argument, the United States Supreme Court stated:

> "Logically it is impossible, when the tax is fairly apportioned, to have the same income taxed twice. In practical operation, however, apportionment formulas being what they are, the possibility of the contrary is not foreclosed, especially by levies in domiciliary States." *Portland Cement, supra* at 462–63.

If one cannot show an unfair apportionment, the argument that there is a multiple tax must fail.[12] Northwest relies on *Mid-Continent Airlines v. State Board of Equalization & Assessment,* 157 Neb. 425, 59 N.W.2d 746 (1953) and *Central Railroad Company of Pennsylvania v. Pennsylvania,* 370 U.S. 607 (1962), for the proposition

[12] *Id.* at 463; *Standard Steel Co. v. Washington Revenue Dept.,* 419 U.S. 560, 563 (1975).

that if nonmigratory property could be taxed in one jurisdiction it could not be taxed in another. As this court pointed out in *Moore Motor Freight Lines v. Dept. of Taxation, supra* at 391, "[t]axpayer in the instant case places reliance on certain decisions . . . antedating the *Portland Cement Co. Case.*" This observation is true in this case also. Northwest relies on cases antedating the *Norfolk & Western Railway Co. Case.* The *Norfolk & Western Railway Company* is the better precedent for this case. The question is whether the apportionment was fair or whether it led to a grossly distorted result. The DOR only used the out-of-state nonmigratory property in a base from which it calculated Wisconsin's share of the system. If there is a relationship between Wisconsin and this property, this formula is not impermissible.

Northwest also contends that the inclusion of the out-of-state nonmigratory property resulted in a tax which was substantially unjust. Sec. 76.18, Stats., gives a presumption of regularity to the proceedings of the DOR and its determination should not be set aside on any ground "not affecting the substantial justice of the tax." There has been no showing that the tax was not substantially just. Again, if it had been proved that there was no connection between out-of-state nonmigratory property and Wisconsin, the inclusion of this property in the tax base would have been unjust. Further, in 1973 Wisconsin did not tax the in-state nonmigratory property at full value but only on the Wisconsin portion of the entire system value. The formula used does not offend the commerce clause, due process nor the Wisconsin statute and is, accordingly, approved.

Sec. 76.18, Stats., gives the trial court the power to redetermine the assessment when in its judgment the assessment should be substantially less or more than that

determined by the DOR. The trial court made two adjustments and from these the DOR cross-appeals. In determining the value of the entire system the DOR averaged the earnings of Northwest over a five-year period. The first two of these years were high income years with the remaining three showing a steady decline in income. The trial court concluded that using a four-year period would produce a more accurate reflection of value. We agree. Subsequent to the 1973 assessment the DOR devised a new formula for determining the portion of an airline system value which should be attributed to Wisconsin. Using this formula, Wisconsin's share of the total value is 1.9 percent rather than 1.6 percent. One thing that everyone working in the field of assessing taxes on interstate transportation systems seems to agree on is that "no one has as yet found a combination of allocation factors that will adequately and equitably distribute the value of all the operating property to the several taxing jurisdictions." This statement was made by the DOR in a 1954 letter to Capitol Airlines, Inc. This situation still exists. The trial court's observation that it would be more fair to assess Northwest's tax by the same formula that was applied to all other airlines in Wisconsin in 1973 cannot be successfully challenged on this record. For this reason the original 1.6 percent allocation factor, determined by the DOR, should be used. Both of the adjustments made by the trial court produced a more fair and more uniform tax; they should not be changed nor set aside in appellate review.

*By the Court.*—Judgment affirmed. No costs to either party.