REQUESTED BY: Senator Vary Johnson District No. 8 1101 State Capitol Lincoln, Nebraska 68509
Dear Senator Johnson:
You have pointed out to us that Neb.Rev.Stat. § 77-1250
(Reissue 1981) distributes the tax on air flight equipment collected pursuant to § 77-1249 to the counties for credit to the county general fund proportionate to the total actual valuation of each county. You point out that we successfully challenged in the District Court of Lancaster County a distribution of state aid proportionate to valuation of taxable property in the counties, and ask whether the distribution pursuant to § 77-1250 is subject to the same attack. You ask this for the reason that if it is, you may submit an amendment to a pending bill to correct any constitutional infirmity.
It is difficult to give you a categorical answer to your question, as there is very little precedent to guide us except the district court case you referred to, State exrel. Douglas v. Stevenson, and the case of State ex rel.Douglas v. Marsh, 207 Neb. 598, 300 N.W.2d 181 (1980).
Marsh established that formulas for granting state aid to political subdivisions must have some rational justification, and cannot be wholly arbitrary and unreasonable. The district court in Stevenson held that a formula for distributing such aid proportionate to assessed valuations operated to give the most aid to counties needing it least, and was irrational.
However, the distribution we are concerned with is not state aid, and that may make a crucial difference.
The standard rule with respect to classification is that in order for it to be valid, it must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. See, City of Scottsbluff v.Tiemann, 185 Neb. 256, 175 N.W.2d 74 (1970). When state money, which has been raised by taxation, is to be distributed to aid political subdivisions, this, in our opinion, requires either that it be based on the proportionate needs of the various political subdivisions, or upon their entitlement to it because of their contributions to the state coffers. Various attempts to measure need have been used, the simplest of which is probably population. Losses suffered by reason of exemptions is another. In some states, state aid has been used to return state money to its source, as, for example, measuring state aid by the income tax or sales tax collected in the various counties.
Here, however, we are not dealing with state aid. Neb.Rev.Stat. §§ 77-1247 to 77-1250 (Reissue 1981) deal with the taxation of the flight equipment of air carriers. As we understand it, `flight equipment' means airplanes of air carriers which fly in this and other states, so that they do not have permanent situs in this state, which would give the taxing entities of that situs authority to tax the planes at their full value.
The case of Mid-Continent Airlines v. State Board ofEqualization and Assessment, 157 Neb. 425, 59 N.W.2d 746
(1953) held that in the situation where a fleet of planes had no taxable situs in any one state where the full value could be taxes, each state in which the planes land and engage in interstate business could tax a part of their value. This is what §§ 77-1247 to 77-1250 do.
The problem is what rate of tax to apply, and what to do with the proceeds. The state itself, of course, cannot levy a property tax for state purposes. The proceeds of the tax must go to its political subdivisions.
Presumably, the statute could simply assign a proportion of the value allocated to Nebraska to the airports at which the planes land, the proportion to be based upon the number of landings, revenue generated, or some such basis. The taxing entities having jurisdiction over such airports could then apply their levies to the values assigned. However, the Legislature obviously felt that, since the air carriers serve the entire state, it would be unfair to assign all of the value to the situs of the few airports, and felt that this additional value should be spread around the entire state.
The problem then remained of how this additional value should be allocated, and what rate of tax should be applied. To assign a part of the value to all the taxing entities in the state would mean that every carrier would be subject to the hundreds of levies made in the state, and would have to pay taxes in all 93 counties. The Legislature therefore provided that the Tax Commissioner should calculate an average mill levy, and collect it from the carriers.
Then, how should it be distributed? This is, essentially, simply additional taxable value allocated to the state. It could be allocated on a number of different bases, including population or taxes levied. However, to assign additional taxable value in proportion to the taxable value of other property in the taxing entity does not appear to us to be wholly irrational. This is what has been done, although, of course, the mill levy applied is the average mill levy, rather than the mill levy of each county.
The Legislature has broad discretion in these matters, and the court will not interfere unless the discretion has been exercised in a wholly irrational manner. It does not appear to us to have been so exercised in this situation, and we believe we can successfully defend the distribution formula involved.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General